GEORGE W. COX & another *vs.* SAMUEL A. SEGEE & others.

Suffolk. March 14, 15, 1910. — September 7, 1910.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Municipal Corporations. Revere. Tax,* Abatement. *Mandamus.*

While two citizens and taxpayers of a town might maintain a petition for a writ of mandamus to compel the assessors of taxes of the town to comply with a valid by-law of the town, even though the selectmen of the town had declined to act in the matter and the Attorney General had declined to intervene, such a petition cannot be maintained by two citizens and taxpayers of the town of Revere against the assessors of taxes of that town to compel them to comply with a by-law of the town which provides that the assessors shall keep a record of all abatements of taxes, the names of the persons taxed and the reasons for and amounts of abatements, and shall annually make a full report to the town thereof and of the valuation of " real and personal and total the rate of taxation, the amount of money raised, and amount of money received as taxes from other sources than taxation by the town," because such by-law is invalid, the Legislature only, and not the town, having power to lay such duties upon the assessors, and the Legislature not having done so.

PETITION, filed on October 19, 1909, by two citizens and taxpayers of the town of Revere, for a writ of mandamus commanding the respondents, assessors of taxes of that town, to make a full report to the town of all abatements of taxes made by them between March 5, 1906, and March 1, 1909, and of the amounts of such abatements and the reasons therefor.

The petition was heard by Sheldon, J., who reported it for determination by the full court.

The facts are stated in the opinion.

*J. H. Burke & R. Walsworth,* for the petitioners.

*S. R. Cutler,* for the respondents.

BRALEY, J. The town of Revere enacted a by-law which provided " that assessors shall keep a record of all abatements of taxes, the names of the parties taxed, and the reasons for and amounts of abatements. And they shall annually make a report of the valuation real and personal and total the rate of taxation, the amount of money raised, and amount of money received as taxes from other sources than taxation by the town, with a full report of all abatements, with the amounts of the abatement, the names of the persons benefited, and the reasons therefor, and they shall at least once in two years, cause to be

printed and incorporated in the annual town report, the tax and valuation list for that year." It is conceded, that while abatements have been granted, no report of the amounts, with the name of the person assessed, has been rendered, and this petition is brought for a writ of mandamus to compel the assessors, who are made respondents, to comply with the by-law.

The first contention of the respondents is, that the petitioners are not individually entitled to relief, as any rights which they may have as citizens are held and enjoyed in common with the general public, whose officers alone can enforce the remedy. But if in the performance of their official duties the respondents were subject to the by-law, the petitioners, as inhabitants and taxpayers of the town, may compel its enforcement by mandamus, even if upon their request the selectmen refused to act and the Attorney General after hearing the relators declined to intervene. *Brewster* v. *Sherman*, 195 Mass. 222, 224. *Weld* v. *Gas & Electric Light Commissioners*, 197 Mass. 556, 557. Compare *Fowler* v. *Brooks*, 188 Mass. 64.

It is further contended that, the town having been without authority to enact the by-law, the respondents were under no obligation to comply with its provisions. If towns ordinarily derive their corporate existence by the will of the Legislature, yet in the early settlement of the State they came into existence without having been created by royal charter or by legislative act. The General Court, however, from time to time has conferred upon them authority to regulate and manage their internal affairs, and for this purpose the corporate power of towns to adopt reasonable by-laws not repugnant to law has been recognized and sanctioned from early colonial times. 1 Mass. Col. Rec. 172. 11 Plym. Col. Rec. 32, 110, 192. 1 Prov. Laws, 1692–93, c. 28, §§ 3, 5. By long usage and independently of statutory provisions, ancient customs in many instances ripened into regulations, which have been upheld when expressed by a vote of the town if not opposed to the general laws. The subject is quite fully discussed by Chief Justice Shaw in *Willard* v. *Newburyport*, 12 Pick. 227, and in *Spaulding* v. *Lowell*, 23 Pick. 71, 77, and by Chief Justice Gray in *Lynn* v. *Nahant*, 113 Mass. 433. The St. of 1785, c. 75, § 7, which repealed previous enactments, empowered towns "to make and agree upon such necessary rules,

orders and by-laws, for the directing, managing and ordering the prudential affairs of such town, as they shall judge most conducive to the peace, welfare and good order thereof; and to annex penalties for the observance of the same, . . . provided that they be not repugnant to the general laws of the government "; and by the second article of amendment to the Constitution, which was ratified and adopted April 9, 1821, such by-laws were made " subject, at all times, to be annulled by the General Court." The subsequent revisions found in the Rev. Sts. c. 15, § 13, the Gen. Sts. c. 18, § 11, the Pub. Sts. c. 27, § 15, which were in force when the present by-law was adopted, and in R. L. c. 25, § 23, contain similar provisions. It undoubtedly was within the power of the Legislature to have authorized towns to prescribe and regulate the duties of assessors, but, not having delegated this power in express terms, if the right exists, it must be found by implication in the general phrase empowering them to provide for the direction and management of their prudential affairs. In an approximate definition of this elastic term, it was said in *Willard* v. *Newburyport,* 12 Pick. 227, 231, " perhaps no better . . . description can be made, than to say that it embraces that large class of miscellaneous subjects affecting the accommodation and convenience of the inhabitants, which have been placed under the municipal jurisdiction of towns, by statute or by usage." The power to levy proportional and reasonable assessments and taxes is vested solely in the legislative branch of the government, and the raising of the public revenue by taxation is not dependent upon local usage, but since St. 1785, c. 50, has been regulated by a uniform statutory system applicable to all the inhabitants of the Commonwealth. When under R. L. c. 11, § 334, in compliance with this governmental requirement the respondents were chosen assessors, they were subject to a penalty if after being summoned they failed to take the oath of office. R. L. c. 25, § 97. And upon taking the oath of office prescribed by R. L. c. 25, § 68, they were not the agents or servants of the municipality, but became public officers, whose powers and duties were fully defined by c. 12. *Walker* v. *Cook,* 129 Mass. 577. *Welch* v. *Emerson, ante,* 129. *Knight* v. *Thomas,* 93 Maine, 494, 501. It was their duty, before the taxes were committed to the collector,

to deposit either the books, or an attested copy, in which were entered and exhibited the number and assessment of the polls and the valuation of all the taxable estates of the inhabitants assessed with the valuation and assessment of non-residents, in the office of the assessors, or if they had no office, with their chairman, for public inspection.   R. L. c. 12, §§ 56, 60.   The petitioners in common with their fellow townsmen, if they desired, could have obtained from these books, with the table of aggregates, the fullest information as to the taxable valuation of the town, the number of polls, the rate of the levy, with the names and classification of the individuals, firms and corporations assessed.   It possibly may be for the interest of the town that a copy of the valuation list for that year shall be published biennially in the town report, but the statute does not require the assessors to prepare the copy or to cause it to be printed. By §§ 73 to 76 of this chapter elaborate provisions are also made for the abatement of taxes by the assessors, but they are not required to furnish any report of their doings to the town or to the public at large, nor until the passage of St. 1909, c. 517, were they directed to keep a record of abatements which had been allowed.   The statutory compensation providing for their services, moreover, did not include payment for work which forms no part of their duties.

While entitled in its municipal capacity to all the privileges and benefits of local self-government so far as conferred by the general laws, yet, the town not having been granted authority to impose upon the assessors the performance of additional and extrinsic duties, the respondents, in the opinion of a majority of the court, are not shown to have been guilty of official misconduct in refusing to obey the requirements of an invalid by-law.   See *Commonwealth* v. *Turner*, 1 Cush. 493 ; *Commonwealth* v. *Patch*, 97 Mass. 221, 222 ; *Commonwealth* v. *Wilkins*, 121 Mass. 356, 357 ; *Commonwealth* v. *Allen*, 128 Mass. 308 ; *Walker* v. *Cook*, 129 Mass. 577 ; *Newton* v. *Belger*, 143 Mass. 598 ; *Clinton* v. *Welch*, 166 Mass. 133.

*Petition dismissed.*