Garsh, J.
This action arises from the alleged failure of defendant RES Engineering, Inc. (“RES”) to pay to plaintiff Ram Kohli (“Kohli”) his salary. Kohli alleges that, by failing to pay him his salary from September 24, 1999 through December 31, 1999, RES breached his employment agreement (Count I) and violated the Massachusetts Weekly Payment of Wages Act, G.L.c. 149, §§148 and 150 (Count II). RES now moves to dismiss Count II on the grounds that Kohli is not entitled, as a matter of law, to the protections of section 148. For the reasons set forth below, the defendant’s motion to dismiss is DENIED.
BACKGROUND
The complaint alleges the following facts:
On October 26, 1998, Kohli and RES entered into a written employment agreement (“Agreement”), pursuant to which Kohli was to receive an annual salary of $95,000, payable bi-weekly. The Agreement also provided that Kohli was eligible for an incentive bonus, which for 1998 was guaranteed to equal $5,000 and for the years 1999 and 2000 was to equal a specified percentage share of RES’ net profits from the operation of its Design Cost Center. In addition, RES promised to give Kohli a specified percentage of RES’ profit reserved for the company’s shareholders, but the Agreement also provided that, in the event that RES’ business was severely curtailed and its profits vanished, Kohli would share in RES’ losses proportional to his share of profit during periods of profitability.
Kohli’s title was Vice President Engineering. The Agreement provided that he would head up RES’ Mechanical Engineering design group and that his engineering responsibilities would include development of the Mechanical Engineering group, assistance in Business Development, and design engineering.
The employment agreement had a two-year term. It provided that should Kohli’s term be reduced, he would receive a severance package, the terms of which were spelled out in the Agreement.
On September 24, 1999, RES ceased paying Kohli his salary. On November 27, 1999, Kohli filed a NonPayment of Wage Complaint Form with the Massachusetts Office of the Attorney General. RES terminated Kohli’s employment with the company effective as of December 31, 1999. Kohli received no severance pay. On February 25, 2000, the Office of the Attorney General informed Kohli that he could file a private cause of action with the Superior Court against RES under G.L.c. 149, §§148-50, the Weekly Payment of Wages Act (“Wage Act”), before the expiration of the statutory ninety-day waiting period and without waiving his rights under the statute to obtain treble damages and attorney fees.
DISCUSSION
When evaluating the sufficiency of a complaint under Mass.R.Civ.P. 12 (b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977).
The question raised by the motion to dismiss is whether Kohli was an employee who is entitled to the protections of the Wage Act. RES contends that a highly compensated professional employee is not protected by the Act and, further, that, Kohli cannot be an employee entitled to the benefits of G.L.c. 149, §148, because he is deemed an “employer" by the provisions of that section.
General Laws c. 149, §148 generally requires “(e]very person having employees in his service” to pay, within a specified time period, to “such employee the wages earned by him.”[1] RES does not argue that Kohli was not an employee of RES within the common understanding of that word. Therefore, unless the Wage Act excludes highly compensated professional employees from its scope, Kohli is entitled to the benefits of the Act.
The Wage Act contains no such exclusion. Indeed, Section 148B creates a rebuttable presumption that any individual “performing any service” for another is an employee for purposes of Section 148.[2] See Molloy v. Massachusetts Mortgage Corp., 1998 Mass.App.Div. 3, 5; Scott C. Moriearty, Employment Law, §14.1 at 202 n.5.5 (2000). Furthermore, Section 148 explicitly refers to “employees engaged in a bona fide executive, administrative or professional capacity” in the context of permitting said employees to be paid biweekly, semi-monthly or, at the employee’s option, monthly instead of requiring them to be paid within six days of the termination of the pay period as is the case with most other employees. G.L.c. 149, §148. 'Section 148 goes on to provide that “the words salaried employee shall mean any employee whose remuneration is on a weekly, bi-weekly, semi-monthly, monthly or annual basis, even though deductions or increases may be made in a particular pay period.” G.L.c. 149, §148 (emphasis added). Section 148 explicitly lists categories of employees to whom “(t]his section shall not apply.” One of those categories is not highly paid employees. Had the Legislature intended the Wage Act to apply only to low-wage employees, it surely would have explicitly so said. The plain and unambiguous statutory language demonstrates that executive and professional employees, no matter how highly compensated they may be, are protected by the Wage Act from the unreasonable detention of their salary.
None of the cases relied upon by RES support the proposition that Section 148 of the Wage Act provides no protection for highly compensated individuals. Rather, they address whether certain forms of com *110 pensation are encompassed by the undefined statutory term “wages.” In Cumpata v. Blue Cross Blue Shield of Massachusetts, Inc., 113 F.Sup.2d 164, 168 (D.Mass. 2000), for example, the District Court held that contingent commissions above and beyond a senior sales executive's base salary, which were to be calculated on a quarterly or annual basis, are outside the scope of the Wage Act because such compensation is triggered by contingencies. Nothing in the language or the logic of that decision suggests that had the senior sales executive sought to recoup his base salary, his claim would have been dismissed. Indeed, in declining to rule on the employer’s alternative argument that the commissions sought had not been “definitely determined” as required by the statute because they were the subject of a contractual dispute,[3] the Court noted that it was reluctant to accept an argument that would undercut “the policy supporting the Wage Act. The Wage Act is meant to protect employees from the dictates and whims of shrewd employers. The interpretation proffered by [the employer) potentially removes certain employees from the protection of the Wage Act. This Court is unwilling to give the statute’s language such a broad reading." Id. Similarly, in Baptista v. Abbey Healthcare Group, Inc., C.A. No. 95-10125, slip op. at 8-9 (D.Mass. April 10, 1996) (Stearns, J.), the Court held that contingent stock options granted as part of an executive compensation package are not “wages” within the meaning of the statute. Once again, the Court drew a distinction between regular salary and contingent forms of compensation, observing that the Supreme Court in Massachusetts v. Morash, 490 U.S. 107, 117 (1989), had “construed the statute to apply to corporate executives as well as to lower level employees, but its holding is limited to the payment of ordinary wages and wage equivalents, specifically accrued vacation pay and sick leave.” Id. at 8. See also Dennis v. Jager, Smith & Stetler, 2000 WL 782946 (Mass.Super. 2000) (Ball, J.) [11 Mass. L. Rptr. 567] (an attorney’s irregular compensation, in the form of a draw, that is contingent on a number of factors is not a “wage” under the Wage Act).
RES alternatively argues that Kohli cannot be an “employee” for purposes of Section 148 because he is an “employer” as that term is used in Section 148. The Wage Act provides that ”[t]he president and treasurer of a corporation and any officer or agent having the management of such corporation shall be deemed to be the employer of the employees of the corporation within the meaning of this section.” G.L.c. 149, §148. It does not necessarily follow that a person cannot be both an employer and an employee for purposes of Section 148. There appears no reason to assume, for example, that the Legislature intended to deprive a comptroller of the right to seek treble damages under chapter 149 if the president of the corporation for whom he works decides, on a whim, not to pay the comptroller’s salary even if, under some circumstances, the comptroller himself would incur personal liability for failure to timely pay employees. The parties provide no authority which discusses whether an officer “having the management of’ a corporation can himself assert a claim under the Wage Act against his corporate employer should he be wrongfully deprived of his salary. A complaint should not “be dismissed because it asserts a new theory of liability . . . because ‘it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader’s suppositions.’ ” New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30 (1988) (citations omitted). Moreover, whether Kohli’s position as Vice President Engineering amounted to his being an officer “having the management of’ RES within the meaning of the Wage Act cannot be determined on the face of the complaint. It may be relevant whether Kohli’s duties included performing any act relative to payment of persons under his supervision.
In sum, the defendant has failed to show that Count II of the Complaint alleges no set of facts which would entitle the plaintiff to relief under G.L.c. 149, §§149 and 150.[4]
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant RES Engineering Inc.’s motion to dismiss Count II of the plaintiffs Complaint is DENIED.

 Section 148 provides, in pertinent part:
Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week.. . and any employee discharged from such employment shall be paid in full on the day of his discharge . . . and provided, further, that employees engaged in a bona fide executive, administrative or professional capacity as determined by the attorney general. . . may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly . . . For the purposes of this section the words salaried employee shall mean any employee whose remuneration is on a weekly, bi-weekly, semi-monthly, monthly or annual basis, even though deductions or increases may be made in a particular pay period . . .
This section shall not apply to an employee of a hospital which is supported in part by contributions from the commonwealth or from any city or town, nor to an employee of an incorporated hospital which provides treatment to patients free of charge, or which is conducted as a public charity, unless such employee requests such hospital to pay him weekly. This section shall not apply to an employee of a co-operative association if he is a shareholder therein, unless he requests such association to pay him weekly, nor to causal employees as hereinbefore defined employed by the commonwealth or by any county, city or town.
No person shall by a special contract with an employee or by any other means exempt himself from this section . . . The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section...

 Section 148B provides, in pertinent part:
For the purpose of this chapter, individuals performing any service, except as authorized under this chapter, shall be deemed to be employees under this section unless it is shown that: such individual has been and will continue to be free from control and direction in connection with the performance of such service under his contract; and such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all places of business of the enterprise; and, such individual is customarily engaged in an independently established occupation, profession or business of the same nature as that involved in the service performed.
Nothing on the face of the Complaint would warrant an inference that Kohli was not under the control and direction of RES when he performed services for the company, and RES does not so contend.

 Section 148 provides that it “shall apply, as far as apt, to the payment of commissions when the amount of such commissions . . . has been definitely determined and has become due and payable to such employee . . .”

 After the hearing on the defendant’s motion to dismiss, the plaintiff filed an Amended Complaint that includes, as part of Count II, the defendant’s failure to pay him severance pay. The defendant’s arguments that severance pay does not constitute “wages” within the meaning of G.L.c. 149, §148 and that the plaintiff cannot recover wages for any time period not mentioned in its complaint filed with the Office of the Attorney General are not addressed herein since Count II is not subject to dismissal if it can support relief on any theory of law. Whittinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). “(A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate.” Nader v. Citron, 372 Mass. 96, 104 (1977). To the extent that the defendant wishes to argue that certain portions of Count II lack merit even if there may be facts that would entitle the plaintiff to some relief under that count, it may move for partial summary judgment. See Mass.R.Civ.P. 56(b), (d).